Wallace Wood Properties v. Wood Good morning, Your Honor. Attorney Patrick Carroll for the appellant, Wallace Wood Properties, LLC. May it please the court and good morning on this is what I feel was an unfair and 12b6 dismissal of a second amended complaint. And that the Learned Council, Learned District Judge Swain really went beyond the powers permitted to her under Rule 12b6 to dismiss the action, specifically with in engaging really in a summary judgment type analysis of the second amended complaint. I'm sure Your Honors have seen that the very fact that there are multiple dates considered by both parties as to when the cause of action accrued that in and of itself as the dismissal was done without discovery, I believe the complaint alleges that she possessed. Well, Your Honor, I believe I will have to make the concession. That is what your complaint says. It's words on paper. I have to make the concession that the complaint was too verbose, but I believe Your Honor, a fair reading of the entire complaint, especially with certain paragraphs, that an alternative reading of the complaint is that no bad faith was inferred to Mrs. Wood, the defendant, until at least the time the will was noticed for probate. At that time, she would have received a copy of the will and a notice that it was being offered for probate. She would have had the opportunity to object. But at that point, the surrogate would not have accepted the will for probate, had Mrs. Wood not been notified of it. I think that's the only time it can be unfairly... That would have been 2011? That would have been 2011. But didn't Mr. Spurlock know that she possessed these images in 2006? He visited, he brought to her. I believe that having multiple images on the wall did not necessarily infer to him the knowledge that these were part of a gratuitously dumped set of artwork given to Mrs. Wood in 2005. They didn't discuss the provenance of the artwork at that time. Can I ask you a question? It seems to me that Wallace Wood Properties can't have any better rights than Robinson had, right? Exactly, Your Honor. Okay, so Robinson didn't do anything as the probate was in 1981. So, you know, it seems to me that latches attached way before Wallace Wood Properties got involved in this thing. I mean, he can't get better rights than Robinson. Understood, Your Honor. I believe, though, that death was in 1981, and in fairness to Mr. Robinson, when he filed the probate, he listed the gross assets of the estate at $35,000. I would hold that that is further proof that they were completely unaware that Marvel Comics was... But he's the executor. He knows this is an artist who worked for Marvel Comics, and he doesn't do anything to gather up potential artworks since 1981, and then you want to get the courts involved, lo and behold, in 2013. It just sounds to me like we're not going anywhere with this case. Well, Your Honor, the latches defense to the complaint was not addressed by Judge Swain, but I would also assert that in order to get into latches under these circumstances, we would have to do discovery and reinstate the complaint. I also believe there is no obligation to probate a will, although I can offer no explanation as to why he waited as long as he did to probate it. Help me understand something. I know that there's case law on this, but the New York law just seems somewhat counterintuitive to me in the sense that if it was a wrongful possession, the statute ran, but if it was not, it was tied to a demand. What's the justification for that difference on a New York law? From the State of New York v. 7th Regiment and the N. Ray Volga case, the rationale is that the bad faith possessor of the artwork knows he possesses it in bad faith, therefore giving him an opportunity or giving him a fair demand to turn it over would be a waste of time because he's already taken it unlawfully. But if I don't know that the property has been taken, is that still in your honor? It can, Your Honor, and the Court of Appeals has addressed the discrepancy that Your Honor has just brought up. At the very least, if Judge Braun of the Commercial Division in New York Supreme in the 7th Regiment case actually chides the defendants for taking a position that their own client possessed the artwork, in that case in bad faith, to avoid exactly what Your Honor said, to avoid the fact that the statute of limitations was intended to run from the time they got the demand, in which case they refused New York State's entry into the premises. But in this particular case, first of all, it's unusual that Marvel comic books would just do an art dump like this without checking with anybody, which is surprising. But on that basis, I would assert again that bad faith could not be inferred and was not suggested in the complaint until the will either was probated or B, when Mr. Spurlock sent the letter to Mrs. Wood in 2013 asking for the return of the artwork. In both cases, it keeps us within the three-year statute of limitations. When the art was in the possession of the comic book company, the comic book company owned it, didn't it? They're not the title owner, Your Honor. They would have been owners to everyone else in the world except Mr. Wood. It would have been a bailment situation, I believe, and that is what is asserted in the complaint. They were holding the artwork to use it in the design and the distribution of comic books and just held on to it for a long period of time. And it wasn't work for hire? It was not work for hire, no. Wally Wood was an independent artist. That doesn't mean he can't do work for hire for Marvel Comics. I mean, he's doing comics. Well, I think with the trademark characters such as Daredevil, it used to be that the artist retained rights to the characters that he created, but I don't believe that was put into the record by either party except the Vermin's in the complaint that it was not work for hire. It was his personal creations and he maintained ownership of it. If Marvel was the title owner, so to speak, of the art, they would not, given the value of it, have just turned it over to Mrs. Wood. Why not? There would have been, I don't know, corporations that turn over hundreds of thousands of dollars worth of artwork with no consideration. It's not a verb that Mrs. Wood paid for the artwork at any given time. A gift. It looks like a gift. They don't want it anymore. They don't want to store it. They're not in that business of selling it, so maybe just give it to the person they think ought to have it. Well, I don't believe that any of the defense counsels learned briefs in opposition. They submitted that it was a gift. I understand. I'm just asking. So, Your Honor, there's that. I also believe the judge made a mistake as far as the law went in terms of treating this dump of Marvel artwork as one whole back in 2005. We do know that she sold a couple of pieces, but the statute of limitations would only have run on the pieces that were sold, not the collection in bulk, and that is set forth in Vogel and rather even more clearly in the State of Davis v. Treasurer where the judge in that case gave an example. It is at least a question of fact as to whether the few pieces that were sold were meant to be part of it. When Mrs. Spurlock acquired Mr. Robinson's interest for $35,000, right? It was a no-consideration transfer. The $35,000 value comes from the probate paperwork as the gross value of the estate. The estate. Right. So, when Mr. Spurlock acquired Mr. Robinson's rights, was Mr. Robinson aware that there were hundreds of thousands of dollars worth of art that Mr. Spurlock was going to claim on behalf of the island? I don't believe he was aware of any of that. Otherwise, he would have been duty-bound to up the gross value of the estate in the petition papers. Who was the beneficiary of the estate? The estate was all financial accounts and certain named accounts were payable to the defendant and the rest residue remainder of the estate including all artwork was payable or transferable to Mr. Robinson. So, Mr. Robinson owned the art. Exactly. And he gave up the rights to the art to somebody who knew that there were hundreds of thousands maybe a million dollars worth lodged somewhere else without Mr. Robinson knowing of this circumstance. Well, I don't believe Mr. Robinson is cut out entirely, but I believe the idea behind the assignment and Mr. Spurlock is known to me for 10-12 years now on various art cases. The idea behind assigning to Wood Properties LLC was for licensing and other business aspects as set forth in the complaint. He had no knowledge that this was part of this marble gratuitous dump of artwork onto him. Okay. You've reserved a couple of minutes for rebuttal. Thank you, Judge. We'll hear you then. Thank you. Good morning, Your Honor. May it please the court. My name is Cynthia Arado and I represent the Apele Tatiana Wood. As Your Honors have recognized, we believe the district court correctly relied on the concessions in the second amended complaint to dismiss this case on statute of limitations grounds. The case is also dismissible as a matter of law under laches. As Your Honor, Judge Jacobs, you explained, the complaint makes clear that the plaintiffs have alleged that Mrs. Woods took the artwork in bad faith. They alleged that repeatedly through the complaint. They alleged it before they filed the complaint, when they filed the complaint, when they filed three complaints, and when they filed their opposition to the motion to dismiss. So there's numerous allegations in the complaint about her bad faith. There's letters attached to the complaint that were sent before the complaint was filed that also claim she took in bad faith. And when they opposed the opposition to the motion to dismiss, their introduction, again, reminded the court that Mrs. Woods took in bad faith. So we contend there is no inconsistency in the complaint. At most, the complaint has a separate allegation saying, trying to pinpoint the date of her as when she received the will. But the allegation is... Is that a pleading in the alternative? Well... As far as the entry of judgment on the pleadings? No, and I'd say no for two reasons. One, the allegation about receiving the will has no date. So it's equally consistent with her receiving the will before she received her artwork as it is after she received the artwork. And secondly, you can't be... Since Mr. Wood died in 1981, I guess you're arguing if she was a beneficiary of the will, she would know what's in it. Correct. Especially since she got all the money. Correct, and that's well before 2005 and well before the probate in 2011. But also, the theory of inconsistent pleading allows a plaintiff to plead inconsistently to support two independent causes of action. You cannot use the doctrine to plead inconsistent facts to support a single cause of action. So for that reason as well, that doctrine doesn't help them. But I think the more important point is that the complaint is just simply not consistent in the way they elect. In terms of laches, I just wanted to add that while it is correct that the plaintiff has no better rights than Mr. Robinson, who, as Judge Rastani pointed out, did nothing for 20 years to seek the return of this property, the plaintiff is also bound by the conduct of Wallace Wood. And for 20 years before Mr. Robinson had the right to the complaint, Wallace Wood also never made a demand for the return of the property. And under the Guggenheim case, which is a court of appeals case, you cannot unreasonably delay seeking the return of property if you know where the property is located. And that is a statute of limitations bar under the Guggenheim case. And here there is no dispute. You're saying that because Mr. Wood failed for so many years to demand back the artwork that he created for Marvel Comics, basically Marvel owned it, could have assumed the ownership. Correct. And it's both 20 years of Mr. Woods not seeking the return and an additional 20 years of Mr. Robinson not seeking the return. Then there's six more years after Mr. Spurlock became aware of the facts. There's almost 50 years of delay here. And so for that reason, we believe the complaint is barred by both the statute of limitations and by laches. And then the other thing I just wanted to explain and add is the point about the statute of limitations in the alternative running when Ms. Woods sold two of the pieces of the artwork to Mr. Spurlock in 2010. Ms. Spurlock, however, at that time was not a principal of the Wallace Wood Foundation. That's correct. But the statute for a possessor, this is an alternative argument. So if you assume that the initial acquisition of the artwork didn't trigger the statute of limitations, then any act in contravention of someone else's ownership rights, any overt act will trigger the— Such as selling. Such as selling will trigger the accrual of the statute of limitations. So I don't think there's any dispute between the parties on that point. The plaintiff is arguing that that act of selling the artwork triggered the statute of limitations only for the pieces of artwork that were sold. But I submit that this court in the Songbird case has already ruled otherwise. In the Songbird case, the court ruled that the statute of limitations is not determined on an item-by-item basis when you have the sale of some artwork that was obtained in a unitary collection. And so in the Songbird case, a musician submitted some demo recording tapes to a company under an alleged bailment, just like here. And the company's successor licensed some, but not all, of those recordings in 1986. And it licensed some others in 1991. And the successor sued to recover the recordings in 1995 on a conversion theory. And this court held that that claim was time-barred for all of the recordings based on the estate's licensing of just some of them in 1986. And what this court held was the estate began using the master tapes as its own when it licensed portions of them to Rounder in 1986. The conversion alleged by Songbird occurred no later than that date. No demand and refusal was needed here since the character of the possession had changed by the defendant's actions in treating the master tapes as its own. And we submit that that fact pattern is identical to the fact pattern here. Mrs. Woods, by selling two of the pieces of the artwork to Mr. Spurlock, exercised an overt act that was hostile to the ownership claim of anybody else. And that triggered the sale. Would the same be true of her hanging other items in her apartment? I don't know if her mere possession would trigger the statute of limitations under this theory, but certainly her sale did. If your honors have no further questions, we rest on our papers. Thank you. We'll hear from you. Just two quick notes, your honor. Regarding the Songbird case, I believe the underlying facts are distinguishable. Songbird had to do with a master demo tape of an audio recording, which was then put back into commercial use. As far as I believe all the pleadings are concerned in this case, we're talking about art that was stored in a box or was hung on a private person's, in a private apartment's wall and not displayed for commercial use. I don't believe it is averred that the subject marble art dump was somehow republished, reused, or put back into circulation in the form of reprints or artistic endeavors of that state. You keep calling it a dump. I mean, who else would marble send this stuff to except the ex-wife and putative widow? Because the will wasn't probated until six years later. Well, I believe the divorce was in the 1960s. Yes. The wood was married three times, which is also in the complaint. I don't understand why the second or the last wife would have been the one contacted, why it would have gone to the first wife. I guess that's something for discovery that marble is in the ken of marble at this point. Is it true for 20 years wood didn't sell? Did he seek return of his artwork? He did not seek it, but the corollary to that would be he didn't know that this particular parcel or set of art was in the possession of marble at the time. He was the artist. I'm sorry. I'm sorry. I misunderstood you. Did I say the wrong name? I said the wrong name. Okay. Okay. I would say before the court there is no averment one way or the other that Mr. Wood sought it or did not seek it. That's as much as I know on that. On that, your honors, I would rest. Thank you very much. Thank you both. We'll reserve decision.